WILKERSON *v.* HOOVER.

4-4203

Opinion delivered March 2, 1936.

*G. E. Morris* and *Ralph E. Ray,* for appellants.

*Trimble, Trimble & McCrary,* for appellee.

MEHAFFY, J. M. B. Wilkerson and his wife were married on February 12, 1914, and lived together until March 7, 1930. Their home was at England. They had no other real estate. Mrs. Wilkerson brought suit for divorce in the Lonoke Chancery Court, and on March 18, 1930, a decree was entered by the chancery court granting her a divorce and custody of their two children. The decree also recites: "It is further considered, ordered, adjudged and decreed that the plaintiff be and she is hereby given exclusive possession and control of the homestead of plaintiff and defendant located in the town of England, Arkansas, for the use and occupancy of plaintiff and said minor children." The decree contained the following also: "The court doth retain control of this cause of action for the purpose of conserving the rights of plaintiff and defendant with reference to said homestead and with reference to the custody and control of said minor children."

Mrs. Wilkerson continued to live in the homestead until September, 1931, when she married a Mr. Lescher of Pennsylvania, and moved with her children to Pennsylvania, where she resided with Lescher as his wife until December. About the middle of December, 1931, she returned to England, Arkansas, and procured a divorce from Mr. Lescher, and remarried Mr. Wilkerson. She and Wilkerson lived together after this last marriage for about 18 months, and lived on the homestead at England for a year of that time, and then moved to the hotel and lived there for six months. She and Wilkerson again separated, and she obtained a divorce from him a second time.

While Mrs. Wilkerson was living in Pennsylvania, the appellee, Mrs. Sarah May Hoover, loaned to W. B. Wilkerson some money. He was already indebted to her in the sum of $700, and she let him have $300 more, and he executed a note and to secure the payment of said note, executed and delivered to Mrs. Hoover a mortgage on the homestead at England.

This suit was brought by Mrs. Hoover, the appellee, against M. B. Wilkerson, Mrs. M. B. Wilkerson, and Gerald Wilkerson and Sadie Wilkerson, minors, to foreclose the mortgage. Mrs. Wilkerson filed separate answer, and separate answer was filed for Gerald and Sadie Wilkerson. The decree of divorce granted on March 18, 1930, was not put on record for more than a year after it was rendered, and before it was put on record the mortgage was executed. The chancery court found in favor of appellee, and found that she had a first lien on lot 10 and 15 feet off the side of lot 11 in block 7 in the town of England. A sale of the land was ordered, and this appeal is prosecuted to reverse the decree of the chancery court.

It is the contention of the appellants that Mrs. Wilkerson and her children, under the terms of the first divorce decree, acquired vested property rights in the property of Wilkerson superior and paramount to appellee's mortgage. Appellants cite and rely on 18 C. J. 317. That was where a deed was made giving the unrestricted use of the real estate in perpetuity. Here we have a decree

which gives to Mrs. Wilkerson and the children exclusive possession and control of the homestead of appellant and appellee, not in perpetuity, but for the use and occupancy of appellant and her minor children. The decree also recites that the court retains control of the cause of action for the purpose of conserving the rights of appellant and appellee, with reference to said homestead. This, we think, conclusively shows that Mrs. Wilkerson was given the exclusive possession, not permanently, but to use it and occupy it as a homestead, the court retaining control of the cause of action for the purpose of protecting the rights of both parties.

Attention is next called by appellants to the case of *Colum* v. *Thornton,* 122 Ark. 287, 183 S. W. 205, and they quote as follows: ''The remarriage of a widow and her removal to the homestead of her second husband, does not work a forfeiture of her previously existing right in the homestead of her former husband.'' That is a very different situation from the one we have here. In that case it was the widow claiming the homestead, and the Constitution provides that: ''If the owner of a homestead die leaving a widow but no children, and said widow has no separate homestead in her own right, the same shall be exempt and the rents and profits thereof shall vest in her during her natural life, provided that if the owner leaves children, one or more, said child or children shall share with the said widow and be entitled to half the rents and profits 'til each of them arrives at 21 years of age—each child's right to cease at 21 years of age—and the shares go to the younger children, and then all go to the widow, and provided that said widow or children may reside on the homestead or not; and in case of the death of the widow, all of said homestead shall be vested in the minor children of the testator or intestate.'' Section 6, art. 9, Constitution of Arkansas. The court in the case cited by appellants, therefore, simply held that under the Constitution the widow was entitled to the homestead whether she resided on it or not. There is, however, no such provision with reference to divorced women.

340

This court, however, settled the question of the rights of a divorced woman under a decree almost exactly like the one here. The chancery court in that case entered a decree in which it was stated: "The court finds that said parties own a home in the city of Texarkana, Arkansas, which is now occupied by said plaintiff and her two said children, and the court adjudges that she may continue to occupy the same and hold the household goods." The court further said in that case: "That the plaintiff keep possession of said home, household goods and children, etc." The court then said: "Did that decree divest any part of appellant's title to, or interest in the property, so that he was no longer the unconditional and sole owner thereof, within the meaning of the insurance policy? * * * Now it is seen from an inspection of the decree that the court did not designate the specific property, both real and personal, to which the wife was entitled, nor did it order a sale of the property for division. The effect of the decree both as to the personal property and the real estate was merely to award the possession thereof temporarily to the wife, reserving the question of division or designation of the wife's portion, for future determination. It did not purport to divest any part of appellant's title of the property, nor to diminish his interest therein. The fact that the possession was temporarily awarded to appellant's wife, did not affect his title to the property, and notwithstanding that award, he continued to be the sole and unconditional owner of the property within the meaning of the policies. * * * He is not merely the owner of an undivided interest, but he is the sole and unconditional owner until his wife's interest be asserted and carved out. The title remained vested in the husband solely and unconditionally until it was divested by a decree of the court designating the specific property to which the wife was entitled." *Hix* v. *Sun Ins. Co.*, 94 Ark. 485, 127 S. W. 737.

Here Wilkerson remained the sole and unconditional owner of the property. When appellant married and moved to Pennsylvania, taking her children with her, she abandoned her right to occupy the homestead, and Wil-

kerson had the right to mortgage it to secure the payment of his debts.

Section 6283 of Crawford & Moses' Digest is as follows: "In all cases where any court of chancery shall decree a conveyance of real estate, or that real estate pass, the party in whose favor the decree is made shall cause a copy thereof to be recorded in the recorder's office of the county in which the lands passed or to be conveyed lie, within one year after making of such decree; and if such decree be not recorded within such time, it shall be void as to all subsequent purchasers without notice."

Appellant argues that this question was not raised in the court below and not developed by the evidence nor passed on by the chancellor, but Mrs. Wilkerson alleged in her answer that she was given the exclusive possession and control of the homestead in England, Lonoke County, Arkansas, for the use and occupancy of her and her children. This put the matter in issue, and she could not have introduced the copy of the decree without showing the date when it was recorded. But since Wilkerson remained the sole owner of the property, he had a right to mortgage it while she was living in Pennsylvania as the wife of another man.

Counsel refer to cases where there was a separation by agreement, or where there was divorce from bed and board, and they have no application here. After Mrs. Wilkerson had married Lescher and lived with him a short time in Pennsylvania, she returned to Arkansas and sued Lescher for divorce, and was granted a divorce. Shortly thereafter, she remarried Wilkerson, and they lived on the homestead in Lonoke County for about one year. They then left the homestead and lived at a hotel for six months, and then she again sued Wilkerson for divorce and obtained a decree.

A remarriage of the parties annulled the divorce. 19 C. J. 349. "The remarriage annulled the judgment of divorce and restored the parents to all their marital rights over their children as if they had never been divorced." *Cain* v. *Garner*, 169 Ky. 633, 185 S. W. 122, L. R. A. 1916E, page 682; vol. 2, Schouler on Marriage,

Divorce, Separation and Domestic Relations, 2078. After the remarriage of Mr. and Mrs. Wilkerson the situation was the same as if they had never been divorced. She and the children lived with him on his homestead, and when the last decree of divorce was granted, nothing was said about property at all, and it therefore left Mr. Wilkerson the absolute and unconditional owner of the property, and since the mortgage had been executed while Mrs. Wilkerson was the wife of another man, living in another State, she acquired and had no interest in the homestead superior to the rights of the mortgagee.

The decree of the chancery court is affirmed.